Filed 4/22/25  P. v. Wallace CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DENNIS WALLACE,<br><br>    Defendant and Appellant. | B340347<br><br>(Los Angeles County<br>Super. Ct. No. YA075709) |


THE COURT:

Defendant and appellant Dennis Wallace appeals from the trial court's order denying his petition for resentencing under Penal Code section 1172.6 (former § 1170.95).[1]  Defendant's

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

Effective June 30, 2022, former section 1170.95 was renumbered section 1172.6, with no substantive change.  (Stats. 2022, ch. 58, § 10.)  For simplicity, we refer to the section by its new numbering.

appointed appellate counsel found no arguable issues and filed a brief pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*). Finding that the argument raised by defendant in his supplemental brief lacks merit, we affirm the denial of his section 1172.6 petition.

## BACKGROUND

I. *Facts*[2]

A. <u>The murder of Tyronn Bickham (Bickham) and attempted murder of Emond Taylor (Taylor)</u>

On the night of August 10, 2001, Taylor was standing outside with Bickham and a woman near the trunk of Bickham's car. (*People v. Wallace* (Jan. 8, 2014, B243535) [nonpub. opn.] (*Wallace*).) Taylor saw a white Nissan Altima occupied by four people, including defendant, who was driving, and Deeya Khalill (Khalill), who was sitting in the front passenger seat. (*Ibid.*) "As the Altima drove by, Taylor heard someone in the car say, "'They get a pass'" or "'Hey, you straight.'"" (*Ibid.*)

"Several minutes later, after the [woman] had departed, Taylor saw the Altima again. The Altima . . . stopped near an alley. Taylor could see that [defendant] and Khalill were still in the front seat of the car. [¶] A person wearing a black hoodie got out of the back seat and walked to the corner. The person began shooting. Taylor ran towards his house, and Bickham ran in another direction. Taylor jumped over his fence, ran into the back, and entered his house. Taylor told his brother that someone was shooting at him.

---

[2] We provide these facts, drawn from our nonpublished opinion in defendant's direct appeal from his conviction, for context only.

2

"A short time later, Taylor heard a knock on the door. When Taylor opened the door, he saw Bickham, who had been hit by gunshots. Bickham fell to the ground. Taylor called 9-1-1. [¶] Bickham later died from his gunshot wounds." (*Wallace*, *supra*, B243535.)

A responding sheriff's deputy recovered 18 expended shell casings "from '7.62 by 39-millimeter' rounds [that] were all fired from the same weapon." (*Wallace*, *supra*, B243535.) A month later, "the sheriff's department conducted a search of [defendant]'s residence, which was approximately four blocks south of where the shooting had occurred. At that time, Khalill was also in the residence. In a bedroom closet, deputies recovered a magazine for an AK-47 that was loaded with '7.62 by 39-millimeter' rounds. . . . A white Nissan Altima was located at the residence . . . ." (*Ibid.*)

B. The murder of Adiel Quezada (Quezada)

On the night of July 25, 2008, Steven Buchanan (Buchanan) "heard something that sounded like gunshots. He went outside and got into a vehicle with his friend. [¶] Three to five minutes later, Buchanan saw a male clad in a hoodie running past the car as if 'he had done something.' The male ran across the street and stood on the sidewalk. The man eventually got into a black Chevy Tahoe that was driving by, and the Chevy then drove away." (*Wallace*, *supra*, B243535.) A responding sheriff's deputy saw Quezada "bleeding from apparent gunshot wounds to his body. Paramedics unsuccessfully tried to resuscitate Quezada, who was pronounced dead at the scene." (*Ibid.*)

Samuel Feissa (Feissa) heard about Quezada's murder during several conversations. (*Wallace*, *supra*, B243535.) These

included a telephone conversation during which Khalill told Feissa that, after seeing a rival gang member, he and defendant drove to Khalill's house and "retrieved 'burners' (guns). They walked down the street and returned to Quezada, asked him where he was from, and then Khalill and [Raymond] Gibbs [(Gibbs)] 'dumped him out,' meaning they shot Quezada. . . . [Defendant] got into a dark blue Chevy Tahoe and left." (*Wallace, supra*, B243535.)

Feissa also had a conversation with Gibbs during which "Gibbs said that he and Khalill had walked over to Quezada, that Khalill had asked Quezada where he was from, and that Khalill and Gibbs had shot him while [defendant] waited across the street as a 'lookout and cover.'" (*Wallace, supra*, B243535.)

II. *Procedural History*

A. <u>Conviction and sentencing</u>

In 2011, a jury found defendant guilty of the first degree murder of Quezada (§ 187, subd. (a); count 1), the first degree murder of Bickham (§ 187, subd. (a); count 2), and the willful, deliberate, and premeditated attempted murder of Taylor (§§ 664, 187, subd. (a); count 3).[3] The jury found true a multiple murder special circumstance. (§ 190.2, subd. (a)(3).) As to counts 1 and 2, the jury found true allegations that a principal personally and intentionally discharged a firearm causing great bodily injury and death. (§ 12022.53, subds. (d) & (e)(1).) As to count 3, the jury found true the allegation that a principal was armed with a firearm. (§ 12022, subd. (a)(1).) As to all counts, the jury found

---

[3] Khalill and Gibbs were charged and tried with defendant. (*Wallace, supra*, B243535.) Khalill was convicted on counts 1, 2, and 3; Gibbs was convicted on count 1. (*Ibid.*) Neither Khalill nor Gibbs is a party to this appeal.

4

true allegations that the offenses were committed for the benefit of, at the direction of, and in association with a criminal street gang. (§ 186.22, subd. (b)(1)(C).)

Defendant was sentenced to life in prison without the possibility of parole for counts 1 and 2, plus two terms of 25 years to life for the firearm enhancements. Ten-year sentences for the gang enhancements on counts 1 and 2 were stayed. For count 3, defendant was sentenced to a term of life, plus 11 years, which included a 10-year gang enhancement.

B. <u>Direct appeal</u>

On direct appeal, we ordered the 10-year gang enhancement on count 3 struck and replaced by a 15-year minimum parole eligibility term. (*Wallace*, *supra*, B243535.) We also ordered the modification of the abstract of judgment to reflect joint and several liability for victim restitution. (*Ibid.*) We otherwise affirmed the judgment. (*Ibid.*)

C. <u>Section 1172.6 petition</u>

On January 3, 2024, defendant filed a petition for resentencing under section 1172.6. The People opposed the petition, arguing that defendant was ineligible for relief because he was convicted based on a theory of being a direct aider and abettor and that no jury instructions were given on felony murder, the natural and probable consequences doctrine, or any other theory of imputed malice. Defendant's appointed counsel declined to file a reply.

The trial court held a hearing on defendant's section 1172.6 petition on July 29, 2024. After entertaining oral argument, the court denied the petition, concluding that defendant had not made a prima facie showing of entitlement to relief. The court noted that aiding and abetting instructions were given to

5

defendant's jury, but they had not been instructed on felony murder or the natural and probable consequences doctrine.

D.  Appeal

Defendant timely appealed from the order denying his section 1172.6 petition.  Counsel was appointed to represent defendant in connection with the appeal.  After reviewing the record, appointed counsel filed a brief raising no issues but requesting that we exercise our discretion to independently review the record.

On December 16, 2024, we notified defendant that he had 30 days within which to personally submit a supplemental brief or letter stating any grounds for an appeal, contentions, or arguments for us to consider.  We also informed defendant that his appeal could be dismissed if a supplemental brief or letter was not timely filed.  Defendant filed a supplemental brief on January 2, 2025.

**DISCUSSION**

We decline appellate counsel's invitation to undertake an independent review of the record.  Instead, we limit our review of the order denying defendant's section 1172.6 petition to any argument raised by defendant in his supplemental brief.  (*Delgadillo*, *supra*, 14 Cal.5th at p. 232 ["If the defendant . . . files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion"].)

In his supplemental brief, defendant asserts:  "In 2001 a sole eyewitness said I was not the person.  Almost ten years later he changed that.  2008, the sole wit[]ness testified I was not the person he saw.  I still stand convicted."

6

We are unable to provide any relief based on defendant's contention. The sole purpose of a section 1172.6 petition is to allow persons convicted of murder or other eligible crimes to obtain retroactive relief if they could not now be convicted under recently amended murder statutes. (§ 1172.6, subd. (a); see *People v. Lewis* (2021) 11 Cal.5th 952, 957; *People v. Duran* (2022) 84 Cal.App.5th 920, 927.) Section 1172.6 "does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings." (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947; see also *People v. Burns* (2023) 95 Cal.App.5th 862, 865 ["Section 1172.6 does not create a right to a second appeal"].) Defendant does not present any cogent argument directed at whether the summary denial of his section 1172.6 petition was erroneous, which is the only issue properly before us.

## DISPOSITION

The order denying defendant's section 1172.6 petition for resentencing is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

ASHMANN-GERST, Acting P. J.    CHAVEZ, J.    RICHARDSON, J.

7